[Cite as *Simon v. Simon*, 2021-Ohio-1387.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| PAUL SIMON | C.A. No. 29615 |
| | |
| Appellee | |
| | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| | COURT OF COMMON PLEAS |
| MALINDA SIMON | COUNTY OF SUMMIT, OHIO |
| | CASE No. DR 2007-06-1815 |
| Appellant | |

## DECISION AND JOURNAL ENTRY

Dated: April 21, 2021

CARR, Judge.

**{¶1}** Defendant-Appellant Malinda Simon appeals, pro se, from the judgment of the Summit County Court of Common Pleas, Domestic Relations Division. This Court affirms.

I.

**{¶2}** This case has a long procedural history, parts of which have been detailed in prior appeals. *See Simon v. Simon*, 9th Dist. Summit No. 28962, 2019-Ohio-777; *Simon v. Simon*, 9th Dist. Summit No. 26767, 2014-Ohio-1390; *Simon v. Simon*, 9th Dist. Summit No. 25933, 2012-Ohio-3443. Only the relevant details will be discussed herein.

**{¶3}** In 2008, a divorce decree was filed. At the time, Mr. and Ms. Simon were not employed. The decree provided that Mr. Simon would pay Ms. Simon $250.00 per month in spousal support "until further order of the Court or until [Ms. Simon] shall remarry or die." The trial court "specifically retain[ed] jurisdiction over the matter of spousal support, both in amount

and length and th[e] matter w[ould] be reviewed when [Mr. Simon] has employment or has income through any business he may establish."

{¶4}    In 2013, Ms. Simon sought relief from the judgment due to the discovery of an undisclosed pension plan of Mr. Simon's.

> * * * On September 24, 2014, the trial court granted Ms. Simon's motion for relief from judgment to the extent that [the] previously undisclosed pension plan had been omitted from the property distribution in the divorce decree. The trial court ordered Mr. Simon to pay Ms. Simon $23,793.18 within fourteen days. Mr. Simon attempted to appeal, but this Court dismissed his appeal as untimely filed. When Mr. Simon failed to abide by the September 2014 order, Ms. Simon moved the trial court to hold him in contempt. The trial court found Mr. Simon in contempt on February 13, 2015, entered judgment in favor of Ms. Simon in the amount of the previous order plus her attorney fees, and sentenced Mr. Simon to twenty days in the Summit County jail, subject to purge. Mr. Simon did not appeal the contempt order, and he failed to purge the contempt.
>
> Shortly thereafter, Ms. Simon moved the trial court to modify her spousal support, alleging that Mr. Simon was voluntarily underemployed. She filed a second motion approximately three months later, alleging a change in circumstances. Mr. Simon, in turn, moved to terminate his spousal support obligation. On March 20, 2017, the trial court adopted proposed findings of fact and conclusions of law filed by Ms. Simon and entered judgment on the uncollected balance of the pension assets with interest[ ($18,632.00)], awarded [] attorney fees[ ($7,688.00 pursuant to the February 15, 2015 order and $8,700.00 in additional attorney fees)], [ordered Mr. Simon to pay $4,765.53 for the cost of Ms. Simon's companionship time with the parties' children,] and increased Mr. Simon's spousal support obligation[ to $2,650.00 per month retroactive to August 10, 2012]. [All other pending motions were dismissed.] Although the reason is unclear, the trial court entered a second judgment on these issues dated April 7, 2017. Mr. Simon filed objections to the findings of fact and conclusion of law, but he did not appeal either the March 20, 2017, or the April 7, 2017, order.
>
> Mr. Simon moved to vacate the orders issued on September 24, 2014, February 13, 2015, and April 7, 2017, under Civ.R. 60(B)(1) and (5). He also alleged that the trial court lacked jurisdiction to enter the April 7, 2017, order. * * * The trial court denied the motion * * * without a hearing, and Mr. Simon [appealed].

*Simon*, 2019-Ohio-777, at ¶ 2-4. This Court ultimately affirmed the decision of the trial court. *Id.* at ¶ 1.

{¶5} On September 8, 2017, Ms. Simon filed a motion seeking to hold Mr. Simon in contempt for failure to comply with the April 7, 2017 judgment entry. In addition, Ms. Simon sought attorney fees and expenses in association with pursuing the contempt. On November 1, 2017, Mr. Simon filed a motion seeking to terminate or reduce spousal support due to an alleged decrease in his income and the fact that Ms. Simon was being financially supported by, and living with, another person. In March 2019, Ms. Simon filed a motion seeking attorney fees and expenses for all of her attorney fees and expenses. In April 2019, she filed two affidavits concerning attorney fee expenditures: one indicating that she was requesting $91,553.98 in attorney fees and $1,373.50 in litigation costs and a second from her counsel indicating that his hourly rate was $380.00 and that he had rendered $5,498.02 worth of legal services through March 31, 2019.

{¶6} A hearing was held before the trial court and both parties submitted proposed findings of fact and conclusions of law. The trial court issued a judgment entry on November 15, 2019. The trial court concluded therein that Mr. Simon had paid $40,085.25 to Ms. Simon and vacated the contempt finding of February 13, 2015. The trial court also found that there had been a change of circumstances pursuant to R.C. 3105.18 and ordered spousal support terminated effective November 1, 2017. The trial court additionally found Mr. Simon guilty of the contempt filed by Ms. Simon on September 8, 2017, due to "his willful failure to pay his spousal support obligations as required by the Court[.]" Mr. Simon was sentenced to 30 days in jail, a fine of $200.00, and ordered to pay attorney fees to Ms. Simon in the amount of $6,000.00. Mr. Simon could purge the contempt by paying all of the back spousal support "at a rate of $1,500.00 per month on a regular basis and the awarded attorney fees of $6,000.00 to [Ms. Simon] within nine (9) months of this Judgement Entry."

{¶7} Ms. Simon has appealed, raising five assignments of error for our review.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN THAT IT DETERMINED []NO PURGE WAS AFFORDED TO THE PLAINTIFF PRIOR TO FEBRUARY 13, 2015.  THE TRIAL COURT ABUSED IT[S] DISCRETION IN GRANTING AN ADDITIONAL PURGE OPPORTUNITY.

{¶8}    Ms. Simon argues in her first assignment that the trial court erred in determining that Mr. Simon had not been afforded a purge opportunity with respect to the February 13, 2015 contempt order and erred in allowing him another attempt to purge the February 13, 2015 contempt.

{¶9}    Ms. Simon is correct that the February 13, 2015 entry included purge conditions.  However, Ms. Simon has not indicated how this erroneous finding by the trial court prejudiced her.  *See* App.R. 16(A)(7); Civ.R. 61.  It is the Appellant's burden on appeal to affirmatively demonstrate error.  *See Weber v. Devanney*, 9th Dist. Summit No. 29374, 2020-Ohio-4450, ¶ 30.

{¶10} Ms. Simon additionally contends that the trial court abused its discretion in providing Mr. Simon with another opportunity to purge his contempt.  Notably, Ms. Simon has not cited any authority in support of her position or explained how this has prejudiced her.

{¶11} We are mindful that

pro se litigant[s] should be granted reasonable leeway such that their motions and pleadings should be liberally construed so as to decide the issues on the merits, as opposed to technicalities.  However, a pro se litigant is presumed to have knowledge of the law and correct legal procedures so that [s]he remains subject to the same rules and procedures to which represented litigants are bound. [Sh]e is not given greater rights than represented parties, and must bear the consequences of h[er] mistakes.  This Court, therefore, must hold [pro se appellants] to the same standard as any represented party.

*Regions Bank v. Sabatino*, 9th Dist. Summit No. 25907, 2012-Ohio-4254, ¶ 8, quoting *Sherlock v. Myers*, 9th Dist. Summit No. 22071, 2004-Ohio-5178, ¶ 3.

{¶12} Based upon Ms. Simon's limited argument on appeal, her first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING THAT TWO SEPARATE CONTEMPT[ ORDERS] HAD BEEN SETTLED AND THE PURGE AFFORDED TO PLAINTIFF HAD BEEN RESOLVED. WHEN I[N] FACT, NEITHER CONTEMPT HAD BEEN SETTLED.

{¶13} Ms. Simon argues in her second assignment of error that the trial court abused its discretion in concluding that two contempt orders had been purged. "This Court reviews contempt proceedings for an abuse of discretion." *Morrow v. Becker*, 9th Dist. Medina No. 11CA0066-M, 2012-Ohio-3875, ¶ 47.

{¶14} With respect to contempt, the trial court stated as follows[1]:

[Mr. Simon] was held in contempt of court on February 13, 2015. He was ordered to pay $39,437 for property division and back spousal support obligations. He was sentenced to serve twenty (20) days in jail. No purge was afforded to the Plaintiff and to date he has not served this sentence. The Court finds that Plaintiff has paid $40,085.25 to [Ms. Simon] and this contempt of February 13, [2015], is vacated.

* * *

Further the Court finds that Plaintiff, Paul Simon is guilty of the contempt filed September 8, 2017, by his willful failure to pay spousal support obligations as required by the Court and attorney fees of [Ms. Simon] are appropriate to be paid by [Mr. Simon].

* * *

[Mr. Simon] is found guilty of the contempt motion filed on September 8, 2017. [Mr. Simon] is sentenced to thirty (30) days in jail and a fine of $200 plus legal fees to [Ms. Simon] in the amount of $6,000. [Mr. Simon] may purge this contempt by paying all of back spousal support at a rate of $1,500.00 per month on a regular

---

[1] There are several troubling aspects to the trial court's entry; however, as the parties have not raised the issues on appeal, they will not be addressed. For instance, we are unsure why the trial court was reviewing the 2015 contempt entry as Ms. Simon did not move to impose sentence. Instead, she sought contempt for Mr. Simon's failure to comply with the 2017 entry.

monthly basis and the awarded attorney fees of $6,000 to [Ms. Simon] within (9) months of this Judgment Entry.

{¶15} A hearing was held on this matter over three days in the trial court. Following the second day of testimony, the trial court found Mr. Simon in contempt and set the matter for a disposition in October 2019. The trial court indicated that if Mr. Simon were to pay towards what was owed, the trial court would consider it in mitigation.

{¶16} At the October 2019 hearing, the trial court stated that, "[t]he Court has been made aware that [Mr. Simon] has * * * paid $40,851.25 of the support and of that back payment[.]" Mr. Simon's counsel corrected the trial court and said the figure was actually $40,085.25. Ms. Simon's counsel confirmed that Ms. Simon had received a total of approximately $34,600. Ms. Simon's counsel could not confirm or deny if there were more funds being held by CSEA. The trial court then stated on the record that the trial court was going to allow the sum alleged by Mr. Simon's counsel to serve to purge the February 2015 contempt. Ms. Simon's counsel did not object to the trial court's finding at the hearing.

{¶17} In light of Ms. Simon's failure to object at the hearing to the trial court's characterization of the funds that Mr. Simon's counsel maintained were paid, or raise this issue below, she has forfeited it for purposes of appeal. *See White v. Summa Health Sys.*, 9th Dist. Summit No. 24283, 2008-Ohio-6790, ¶ 24. As Ms. Simon has not developed a plain error argument on appeal, we decline to further address this issue. *See Rivenbark v. Discount Drug Mart*, 9th Dist. Medina No. 17CA0089-M, 2018-Ohio-4072, ¶ 24.

{¶18} As to Ms. Simon's contention that the trial court concluded another contempt had been purged, we cannot say that the trial court did so in its judgment entry. In fact, the trial court found Mr. Simon in contempt, as requested in Ms. Simon's September 8, 2017 motion, for Mr.

Simon's failure to pay spousal support. As outlined above, the trial court then set forth a sentence, which Mr. Simon *could* purge by complying with certain conditions.

{¶19} Ms. Simon's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE COURT ABUSED ITS DISCRETION IN GRANTING HUSBAND'S MOTION TO TERMINATE SPOUSAL SUPPORT AS OF NOVEMBER 01, 2017.

{¶20} Ms. Simon argues in her third assignment of error that the trial court abused its discretion in granting Mr. Simon's motion to terminate spousal support effective November 1, 2017.

The Supreme Court of Ohio has concluded that "the difference between a modification and a termination of alimony was a distinction without a difference. Modification and termination of an alimony award are simply different points or degrees on the same continuum." (Internal quotations and citation omitted.) *Kimble v. Kimble*, 97 Ohio St.3d 424, 2002-Ohio-6667, ¶ 7. In order for a trial court to have jurisdiction to modify an award of spousal support following a divorce, "there must be a reservation of jurisdiction to modify the award in the divorce decree." *Daubenmire v. Daubenmire*, 9th Dist. Medina No. 18CA0045-M, 2019-Ohio-2372, ¶ 9. The moving party must also demonstrate (1) a substantial change in circumstances that renders the award no longer reasonable and appropriate; and (2) [that "[t]he change in circumstances was not taken into account by the parties or the court ]as a basis for the existing award when it was established or last modified, whether or not the change in circumstances was forseeable." R.C. 3105.18(F)(1). In addition, R.C. 3105.18(F)(1) is subject to R.C. 3105.18(F)(2), which states that "[i]n determining whether to modify an existing order for spousal support, the court shall consider any purpose expressed in the initial order or award and enforce any voluntary agreement of the parties. Absent an agreement of the parties, the court shall not modify the continuing jurisdiction of the court as contained in the original decree."

*Kelly v. Kelly*, 9th Dist. Wayne No. 18AP0048, 2019-Ohio-4723, ¶ 10.

{¶21} Ms. Simon does not contest that the trial court retained jurisdiction to modify the spousal support award. The decree provides that the trial court "specifically retain[ed] jurisdiction

over the matter of spousal support, both in amount and length and th[e] matter w[ould] be reviewed when [Mr. Simon] has employment or has income through any business he may establish."

{¶22} In Mr. Simon's motion, he asserted that termination of the award was warranted because there was a significant change of circumstances as his income was significantly less than previously found by the trial court, that Ms. Simon received financial support from a third party, and that Ms. Simon was cohabiting with another person in a relationship akin to marriage.

{¶23} The trial court concluded that Mr. Simon's gross income in both 2017 and 2018 was higher than the $90,000 income found by a previous trial court judge in the March and April 2017 entries. This conclusion is not contested on appeal. Thus, Mr. Simon failed to establish one of the grounds that he believed established a substantial change of circumstances. To the extent the trial court concluded that Mr. Simon's income in 2016 was substantially less than that found by the previous trial court judge in the March 2017 entry, the issue was not properly before the trial court and was irrelevant to the circumstances before it. Mr. Simon's opportunity to challenge the trial court's findings in the March and April 2017 entries had long since passed. In fact, when Mr. Simon attempted to have the April 2017 entry vacated, the trial court denied the motion and this Court affirmed that judgment. *See Simon*, 2019-Ohio-777, at ¶ 1,4. The trial court's 2016 income finding is accordingly stricken from the judgment entry before us.

{¶24} Ms. Simon argues on appeal that there was no change of circumstances sufficient to warrant a termination because Mr. Simon alerted the trial court to Ms. Simon's alleged cohabitation with her fiancé prior to the issuance of the March and April 2017 entries. In turn, Mr. Simon argued in the trial court that the prior trial court judge took no sworn testimony or evidence at the hearing that culminated in the March and April 2017 entries and thus Ms. Simon's asserted cohabitation and support by her fiancé were proper considerations for the 2019 hearing.

{¶25} During the July 2016 hearing, no sworn testimony was taken. Nonetheless, the parties and Ms. Simon's counsel discussed matters with the trial court on the record. During the discussions, the trial court inquired about Ms. Simon's fiancé, whom she asserted she moved in with in 2015. Ms. Simon acknowledged that he was providing some support but also maintained that he was not completely supporting her. Ms. Simon's fiancé did not offer any statements at the hearing. Ms. Simon's attorney agreed that imputing minimum wage would probably account for the support provided by the fiancé.

{¶26} During the 2019 hearing, Ms. Simon continued to maintain that her fiancé was not completely supporting her and that she would pay her fiancé for her expenses when she was able. Ms. Simon averred that she paid for the cable streaming bill and for certain of her medications. She also testified that she sold items on eBay in order to make some money. Ms. Simon maintained that she moved in with her fiancé in October 2014 and had been living with him ever since then but had not committed to marry him even though she wore an engagement ring and held herself out as his fiancée. Ms. Simon did agree that her fiancé was paying more for her at the time of the hearing than in 2014 and that he has gradually increased the amount of expenses that he has covered for Ms. Simon. Ms. Simon was not employed; however, she did admit to assisting her fiancé in his office. She maintained that she was not compensated for the work and that it instead went towards her expenses. However, her fiancé did issue a 1099 for her in 2018 for $20,000 for the work that she performed for him so that Ms. Simon could use the money to pay her attorney.

{¶27} Ms. Simon also testified that she had mental and physical disabilities and she was in the process of trying to collect disability pay from the Social Security Administration. However, as noted by the trial court, Ms. Simon submitted no medical evidence to support her claimed disability.

{¶28} Ms. Simon's fiancé also testified at the hearing. He testified that he owned the house he and Ms. Simon lived in and the cars that they drove. Ms. Simon's fiancé indicated that Ms. Simon works for him almost every day during the week for several hours a day. Ms. Simon's fiancé maintained that Ms. Simon worked for him to aid in paying her attorney fees. Ms. Simon's fiancé did not believe that Ms. Simon could hold a full-time job outside of working for him because of her health issues. Ms. Simon's fiancé also acknowledged that he paid the majority of Ms. Simon's expenses. In fact, he stated that he paid for everything that she could not pay for by selling items on eBay. Ms. Simon indicated that her sales amounted to probably $900 thus far in 2019 and Ms. Simon's fiancé agreed that what she made was not very much. Ms. Simon's fiancé testified that he supported her as if she were his wife and that he would continue to do so as long as they were together. He asserted that he was supporting her at the same level he was in 2017; however, he also indicated that he believed he started paying for Ms. Simon's health insurance in 2017 and that it was a significant expense. Ms. Simon's fiancé estimated that he spends about $25,000 a year on health insurance and that the majority of the cost was for Ms. Simon.

{¶29} Given the testimony from Ms. Simon and her fiancé, the trial court could have reasonably concluded that a change of circumstances, as contemplated by the statute, had occurred. *See* R.C. 3105.18(F)(1). Ms. Simon herself indicated that her fiancé's level of support increased gradually from 2014 when they started living together. While Ms. Simon's fiancé indicated that he had maintained the same level of support since 2017, he also indicated that he began paying for health insurance for Ms. Simon in 2017, which was a substantial expense. Moreover, there was no clarification as to when Ms. Simon's fiancé began paying for almost all of Ms. Simon's expenses. Overall, from Ms. Simon's fiancé's testimony, there was evidence that Ms. Simon's

fiancé paid for almost all of her expenses. This is contrary to Ms. Simon's statements at the 2016 hearing where she indicated that her fiancé was providing some support.

{¶30} While Ms. Simon is correct that there is no language in the decree terminating Mr. Simon's spousal support in the case of cohabitation, nonetheless it "is a factor for the court to consider in determining if a change in circumstances has occurred and, if so, whether a modification to the support order is warranted based on the change." *Kasper v. Kasper*, 9th Dist. Summit No. 26755, 2013-Ohio-3711, ¶ 9. "Cohabitation is a term describing a lifestyle, not simply a housing arrangement. Courts typically look to three factors to determine whether a former spouse is cohabiting: '(1) an actual living together; (2) of a sustained duration; and (3) with shared expenses with respect to financing and day-to-day incidental expenses." (Internal quotations and citations omitted.) *Id.* at ¶ 7.

{¶31} Given the evidence put forth at the hearing, it would not have been unreasonable for the trial court to conclude that the relationship between Ms. Simon and her fiancé had evolved subsequent to the 2016 hearing to such a degree that Ms. Simon really did not have substantial expenses of her own and that her relationship did finally amount to cohabitation as that term is used in the law. We cannot say that the trial court abused its discretion in determining there had been a substantial change of circumstances that made the existing award no longer reasonable and appropriate and that the change was not taken into account by the parties or the court as a basis for the existing award. R.C. 3105.18(F)(1).

{¶32} Ms. Simon focuses on Mr. Simon's indefensible conduct in failing to pay spousal support and other court-ordered payments as a basis for not modifying the award but points to no authority in support of that position. *See* App.R. 16(A)(7). Certainly, Mr. Simon's behavior was appropriate to consider in light of the pending contempt motion; however, Ms. Simon has not

explained how it would lead to the conclusion it was still reasonable and appropriate to continue the spousal support award. The purpose of spousal support is not to punish a former spouse's failure to make court-ordered payments; that is a purpose of contempt. *See Reese v. Reese*, 1st Dist. Hamilton No. C-180077, 2019-Ohio-2810, ¶ 13 (discussing an original spousal support award and noting that "[a]lthough the trial court may consider a party's financial irresponsibility in deciding to award spousal support as a lump-sum judgment, an award of spousal support is not a tool to punish financial irresponsibility. Our sister districts have made it clear that whether a party 'deserves' spousal support is not a basis for awarding or denying support. Rather, the only relevant inquiry under R.C. 3105.18 is whether spousal support is appropriate and reasonable under the circumstances.").

{¶33} Ms. Simon has not demonstrated on appeal that the trial court abused its discretion in terminating the spousal support award. Ms. Simon's third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

THE COURT ABUSED ITS DISCRETION IN DECREASING THE AMOUNT [OF] MONTHLY PAYMENTS TO BE PAID TO DEFENDANT TO SETTLE HIS SPOUSAL SUPPORT ARREARS. THE DECREASE IN THE AMOUNT OF MONTHLY PAYMENTS TO RESOLVE THE PAST DUE SUPPORT ARREARS IS AGAINST THE MANIFEST WEIGHT OF EVIDENCE.

{¶34} Ms. Simon argues in her fourth assignment of error that the trial court erred in reducing Mr. Simon's monthly payment from $2,650.00 per month to $1,500.00 per month.

{¶35} Ms. Simon's argument seems to be premised on the notion that the trial court simply reduced Mr. Simon's monthly payment from $2,650.00 per month to $1,500.00 per month. However, that is not the case. Prior to November 1, 2017, Mr. Simon's spousal support payment was $2,650.00. After the 2019 hearings, the trial court issued the judgment entry currently under appeal which terminated Ms. Simon's spousal support obligation effective November 1, 2017.

The $1,500.00 payment that Mr. Simon was to subsequently make was a payment of his spousal support arrears and it would only become effective if Mr. Simon opted to purge his contempt. Specifically, the trial court determined that Mr. Simon "is found guilty of the contempt motion filed on September 8, 2017. [Mr. Simon] is sentenced to thirty (30) days in jail and a fine of $200 plus legal fees to [Ms. Simon] in the amount of $6,000. [Mr. Simon] may purge this contempt by paying all of back spousal support at a rate of $1,500 per month on a regular basis and the awarded attorney fees of $6,000 to [Ms. Simon] within nine (9) months of this Judgment Entry." Thus, the trial court did not simply decrease Mr. Simon's monthly payments; instead, the trial court terminated ongoing spousal support and *instituted* an arrears payment requiring Mr. Simon to pay his past due support if he opted to purge his contempt. Thus, the payment of $1,500.00 per month in spousal support arrears was a purge condition. Ms. Simon has not pointed to any authority discussing purge conditions or how they should be reviewed on appeal. *See* App.R. 16(A)(7). Instead, Ms. Simon treats the spousal support payment, which was terminated effective November 1, 2017, as being the same as the newly instituted $1,500.00 per month arrears payment, which would only become effective if Mr. Simon decided to purge the finding of contempt. If Mr. Simon served his contempt sentence, nothing in the judgment entry suggests that the $1,500.00 per month payment would take effect.

{¶36} Ms. Simon has not demonstrated that the trial court committed reversible error in ordering Mr. Simon to make $1,500.00 monthly payments towards his spousal support arrearage if he wanted to purge his contempt. Ms. Simon's fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR V

THE TRIAL COURT'S AWARD OF ATTORNEY FEE[S] WAS UNREASONABLE, ARBITRARY AND UNCONSCIONABLE AND THEREFORE, AN ABUSE OF DISCRETION. THE TRIAL COURT ERRED IN

IT[S] MINIMUM AWARD OF ATTORNEY FEES GIVEN THE EGREGIOUS BEHAVIOR OF PLAINTIFF TOWARD THE ORDER[S] OF THE COURT.

{¶37} Ms. Simon argues in her fifth assignment of error that the trial court's attorney fee award was unreasonable. Ms. Simon appears to maintain that the trial court should have awarded her all of her attorney fees she had been billed since August 2017 and also asserts that the trial court did not detail how it arrived at the $6,000.00 attorney fees figure she was awarded for the contempt proceeding. She further asserts that the trial court failed to reference the reasonableness criteria set forth in *Swanson v. Swanson,* 48 Ohio App.2d 85 (8th Dist.1976), and the reasonableness of the amount is not demonstrated by the record.

{¶38} Here, the trial court awarded Ms. Simon $6,000.00 in attorney fees due to Mr. Simon's contempt for his failure to pay spousal support. The trial court did not award Ms. Simon any additional attorney fees. Ms. Simon was seeking over $90,000 for general attorney fees and submitted an affidavit prior to the hearing which indicated that she then owed her attorneys $5,498.02 for legal services rendered through March 31, 2019. At the 2019 hearing, Ms. Simon's counsel indicated that Ms. Simon had been billed for approximately $5,500.00 in legal fees for the contempt proceedings prior to the hearing dates. Counsel indicated his rate was $380.00 per hour. In closing argument, Ms. Simon's counsel indicated that due to his time spent at the hearing, he believed that $10,000.00 was a reasonable amount of attorney fees for the contempt proceeding. Ms. Simon's counsel also requested that she be awarded all of her attorney fees. In Mr. Simon's counsel's closing argument, Mr. Simon's counsel stated that he did not "dispute the $5,500 that [Ms. Simon's counsel] put in his affidavit[]" but believed that Ms. Simon's attorney fees for the hearing itself should not be recovered.

{¶39} With respect to Ms. Simon's general attorney fees incurred from August 2017 onward, we are mindful that R.C. 3105.73(B) states that:

> In any post-decree motion or proceeding that arises out of an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that motion or proceeding, the court *may* award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court *may* consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets.

(Emphasis added.)

{¶40} Thus, while the trial court *could* have awarded Ms. Simon attorney fees, there was no statutory obligation that it had to do so. Ms. Simon has not demonstrated on appeal that the trial court abused its discretion in failing to award her attorney fees pursuant to R.C. 3105.73(B); in fact, she does not mention that section or explain how the trial court failed to comply with it. *See* App.R. 16(A)(7). While Ms. Simon mentions R.C. 3105.18(H) in her brief, that provision was repealed at the time R.C. 3105.73(B) was enacted. Further, the standards outlined in the two provisions are not the same. *Compare* R.C. 3105.73(B) ("In any post-decree motion or proceeding that arises out of an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that motion or proceeding, the court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets.") *with* former R.C. 3105.18(H) ("In divorce or legal separation proceedings, the court may award reasonable attorney's fees to either party at any stage of the proceedings, including, but not limited to, any appeal, any proceeding arising from a motion to modify a prior order or decree, and any proceeding to enforce a prior order or decree, if it determines that the other party has the ability to pay the attorney's fees that the court awards. When the court determines whether to award reasonable attorney's fees to any party pursuant to this division, it

shall determine whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests if it does not award reasonable attorney's fees."). Given Ms. Simon's limited argument on appeal, we cannot say that she demonstrated that she was entitled to over $90,000 in attorney fees.

{¶41} Additionally, we conclude Ms. Simon's reliance on *Swanson* is misplaced with respect to the attorney fees she was awarded. *Swanson*, which is an Eighth District case, examined the award of attorney fees as alimony in an initial divorce proceeding. *Swanson* at 86, 89-90. Here, the trial court awarded Ms. Simon attorney fees for pursuing her contempt motion against Mr. Simon for his failure to pay spousal support. While in her motion Ms. Simon also sought to hold Mr. Simon in contempt for his failure to comply with the other mandates of the April 7, 2017 judgment entry, the trial court's 2019 judgment only referenced Mr. Simon's failure to pay spousal support as the basis for the contempt finding. R.C. 3105.18(G) governs such an award. It provides:

> If any person required to pay alimony under an order made or modified by a court on or after December 1, 1986, and before January 1, 1991, or any person required to pay spousal support under an order made or modified by a court on or after January 1, 1991, is found in contempt of court for failure to make alimony or spousal support payments under the order, the court that makes the finding, in addition to any other penalty or remedy imposed, shall assess all court costs arising out of the contempt proceeding against the person and shall require the person to pay any reasonable attorney's fees of any adverse party, as determined by the court, that arose in relation to the act of contempt.

{¶42} Ms. Simon has not explained how the trial court failed to comply with R.C. 3105.18(G). *See* App.R. 16(A)(7). After the trial court found Mr. Simon in contempt for the failure to pay spousal support, the trial court awarded Ms. Simon attorney fees of $6,000.00. While that amount was more than the approximately $5,500.00 that Ms. Simon's counsel asserted was performed prior to the hearing with respect to the contempt motion, and less than the $10,000.00 that Ms. Simon's counsel claimed in closing arguments was expected to be expended by the end

of the hearing, Ms. Simon has not pointed to any authority that required the trial court to award Ms. Simon the full amount of attorney fees that was claimed by counsel. *See* App.R. 16(A)(7). We note that Mr. Simon's counsel did not dispute that $5,500.00 was expended for the contempt proceedings prior to the hearing but did argue that Ms. Simon should not recover attorney fees for the hours spent at the hearing. Overall, after considering the record, along with Ms. Simon's argument, we cannot say that Ms. Simon has demonstrated that the trial court's award of attorney fees constituted reversible error.

{¶43} Ms. Simon's fifth assignment of error is overruled.

III.

{¶44} Ms. Simon's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
DONNA J. CARR
FOR THE COURT

CALLAHAN, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

MALINDA SIMON, pro se, Appellant.

MICHAEL J. CONNICK, Attorney at Law, for Appellee.